[Cite as *State v. Gensert*, 2016-Ohio-1163.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO.  2015-T-0084** |
| NICKOLAS ALLEN GENSERT, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Trumbull County Court of Common Pleas, Case No. 2015 CR 00385.

Judgment: Affirmed.

*Dennis Watkins,* Trumbull County Prosecutor, and *LuWayne Annos,* Assistant Prosecutor, Administration Building, Fourth Floor, 160 High Street, N.W., Warren, OH 44481 (For Plaintiff-Appellee).

*J. Gerald Ingram,* 7330 Market Street, Youngstown, OH  44512 (For Defendant-Appellant).

DIANE V. GRENDELL, J.

{¶1} Defendant-appellant, Nickolas Allen Gensert, appeals his conviction for Rape in the Trumbull County Court of Common Pleas.  The issues before this court are whether a guilty plea is constitutionally valid where the trial court failed to advise the defendant that he was ineligible for probation/community control sanctions, question the defendant as to whether he both understood and waived each of his constitutional rights individually, advise the defendant that the court could proceed immediately to

sentencing, and where the defendant suggested his actual innocence during his allocution at sentencing. For the following reasons, we affirm the decision of the court below.

{¶2} On May 22, 2015, the Trumbull County Grand Jury returned an Indictment, charging Gensert with Rape, in violation of R.C. 2907.02(A)(1)(b) and (B), and R.C. 2971.03(B)(1)(b) ("the victim was less than ten years of age") and (c) ("the offender purposely compels the victim to submit by force or threat of force").

{¶3} On June 1, 2015, Gensert was arraigned and entered a plea of not guilty.

{¶4} On June 18, 2015, a change of plea hearing was held. Gensert pled guilty to Rape, in violation of R.C. 2907.02(A)(1)(b) and (B), and the factual finding that "the victim was less than ten years of age." R.C. 2971.03(B)(1)(b). On the State's motion, the trial court entered a nolle prosequi as to the factual finding that "the offender purposely compel[led] the victim to submit by force or threat of force." R.C. 2971.03(B)(1)(c).

{¶5} The trial court proceeded immediately to Gensert's sentencing. The court ordered Gensert to serve the jointly recommended sentence of life with a mandatory minimum term of fifteen years, and classified him as a Tier III Sex Offender.

{¶6} On July 29, 2015, Gensert filed a Notice of Appeal. On appeal, Gensert raises the following assignment of error:

{¶7} "[1.] The trial court erred when it accepted Appellant's guilty plea which was not knowingly, voluntarily and intelligently made."

{¶8} "When a defendant enters a plea in a criminal case, the plea must be made knowingly, intelligently, and voluntarily. Failure on any of those points renders

2

enforcement of the plea unconstitutional under both the United States Constitution and the Ohio Constitution." *State v. Engle*, 74 Ohio St.3d 525, 527, 660 N.E.2d 450 (1996). In order for a plea to be knowingly, intelligently, and voluntarily entered, a defendant must be "informed in a reasonable manner at the time of entering his guilty plea of his rights to a trial by jury and to confront his accusers, and his privilege against self-incrimination, and his right of compulsory process for obtaining witnesses in his behalf." *State v. Ballard*, 66 Ohio St.2d 473, 478, 423 N.E.2d 115 (1981), interpreting *Boykin v. Alabama*, 395 U.S. 238, 243, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).

**{¶9}** In 1973, Criminal Rule 11 was adopted to ensure that certain information necessary for entering a knowing, intelligent, and voluntary plea would be conveyed to a defendant. *Id.* at 479-480; *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, ¶ 7 (Crim.R. 11 provides "detailed instruction to trial courts on the procedure to follow when accepting pleas"); *State v. Stone*, 43 Ohio St.2d 163, 167-168, 331 N.E.2d 411 (1975).

**{¶10}** Criminal Rule 11(C) provides, in relevant part, as follows:

(2) In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept a plea of guilty or no contest without first addressing the defendant personally and doing all of the following:

(a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and, if applicable, that the defendant is not eligible for probation or for the

3

imposition of community control sanctions at the sentencing hearing.

(b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.

(c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

{¶11} "Before accepting a guilty or no-contest plea, the court must make the determinations and give the warnings required by Crim.R. 11(C)(2)(a) and (b) and notify the defendant of the constitutional rights listed in Crim.R. 11(C)(2)(c)." *Veney* at ¶ 13.

{¶12} A trial court's compliance with Criminal Rule 11(C) is reviewed under two different standards, one applied to the "nonconstitutional" portions of the Rule, subsections (a) and (b), and another applied to the "constitutional" portion, subsection (c). *Id.*

{¶13} The standard applied to the nonconstitutional portions of Rule 11 is substantial compliance. *Id.* at ¶ 14, citing *State v. Stewart*, 51 Ohio St.2d 86, 93, 364

N.E.2d 1163 (1977). "Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving. * * * Furthermore, a defendant who challenges his guilty plea on the basis that it was not knowingly, intelligently, and voluntarily made must show a prejudicial effect. * * * The test is whether the plea would have otherwise been made." (Citation omitted.) *State v. Nero*, 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990).

{¶14} For the constitutional rights outlined in subsection (c), "strict, or literal, compliance" with the Rule is required. (Citations omitted.) *Veney*, 2008-Ohio-5200, at ¶ 18, and at syllabus ("[w]hen a trial court fails to strictly comply with this duty, the defendant's plea is invalid").

{¶15} The failure to comply literally with the provisions of subsection (c) does not automatically invalidate a guilty plea. *Ballard*, 66 Ohio St.2d at 479, 423 N.E.2d 115. "Failure to use the exact language contained in Crim. R. 11(C), in informing a criminal defendant of his constitutional right to a trial and the constitutional rights related to such trial, including the right to trial by jury, is not grounds for vacating a plea as long as the record shows that the trial court explained these rights in a manner reasonably intelligible to that defendant." *Id.* at paragraph two of the syllabus. The Ohio Supreme Court has reaffirmed that "a trial court can still convey the requisite information on constitutional rights to the defendant even when the court does not provide a word-for-word recitation of the criminal rule, so long as the trial court actually explains the rights to the defendant." *Veney* at ¶ 27.

{¶16} Gensert contends, in the first instance, that the trial court failed to obtain a knowing and voluntary waiver of his constitutional rights: "The trial court set forth the

5

constitutional rights held by Appellant, but, with the exception of his right to a trial by jury, no advice was given to Appellant that by entering his guilty plea, he was waiving those rights." Appellant's brief at 7.

{¶17} During the plea colloquy, the trial court addressed Gensert as follows with respect to his constitutional rights: "Before I can accept your plea today, Mr. Gensert, I need to ask you some questions, make sure that you understand and that you are willing to waive certain rights that you have under the United States and Ohio Constitutions."

{¶18} The trial court proceeded to explain the right to trial by jury and to inquire of Gensert: "By pleading here today you're waiving your right to a trial by jury, do you understand that?"

{¶19} The trial court next explained the State's burden of proof, the right to confront his accusers, the right to compulsory process, and that he could not be forced to testify against himself. At the close of its explanation of each of these rights, the court asked Gensert if he understood the right being explained, but not if he understood that he was waiving the right by pleading guilty. In other words, the court introduced its explanation of Gensert's constitutional rights by advising him that he would be waiving certain rights by pleading guilty. With exception of the right to a jury trial, the court did not ask Gensert about waiver with respect to individual rights, only whether he understood the court's explanation of the right. Gensert maintains this falls short of strict or literal compliance with the Rule. We disagree.

{¶20} The Rule does not require the trial court to obtain an express waiver for each individual right being waived. Rather, the Rule states that the court must

6

"determin[e] that the defendant understands that by the plea [he] is waiving" certain rights and the law requires that the court explain the rights being waived "in a manner reasonably intelligible to [the] defendant." *Ballard*, 66 Ohio St.2d 473, 423 N.E.2d 115, at paragraph two of the syllabus. Here, the court prefaced its explanation of the rights by advising Gensert that these are the rights he must be willing to waive in order for the court to accept his plea. The court's manner of explaining the rights being waived was reasonably intelligible to Gensert. With respect to the right to a jury trial, the court did expressly inquire whether Gensert understood he was waiving the right. No reasonable defendant could fail to grasp that, in this context, the recitation of rights was for the purpose of ensuring that he understood the rights being waived.

{¶21} Any possible confusion on Gensert's part with respect to the rights being waived is nullified by the written plea agreement, which provides, in relevant part:

> The Court and my Attorney have advised me that by entering this Plea of Guilty I am waiving (giving up) the following Constitutional Rights:
>
> My right to a jury trial or trial to the Court;
>
> My right to confront and cross-examine the witnesses against me;
>
> My right to have compulsory process for obtaining witnesses in my favor;
>
> My right to require the State to prove my guilt beyond a reasonable doubt at a trial;
>
> My right not to be compelled to testify against myself; and
>
> My right to appeal upon conviction after trial.

7

I specifically acknowledge that I understand all of the above, and I expressly waive all of those rights, including my right to trial by jury, as to each and every count.

The Ohio Supreme Court has held "an alleged ambiguity during a Crim.R. 11 oral plea colloquy may be clarified by reference to other portions of the record, including the written plea, in determining whether the defendant was fully informed of the right in question." *State v. Barker*, 129 Ohio St.3d 472, 2011-Ohio-4130, 953 N.E.2d 826, ¶ 25.

**{¶22}** Gensert next argues that the "trial court * * * failed to advise Appellant that he wasn't eligible for probation or community control." Appellant's brief at 7. Gensert relies on the case of *State v. Byrd*, 178 Ohio App.3d 646, 2008-Ohio-5515, 899 N.E.2d 1033 (2nd Dist.), for the proposition that "when a defendant on whom a mandatory prison sentence is imposed enters a plea of guilty or no contest, before accepting the plea the court must determine the defendant's understanding that the mandatory sentence renders the defendant ineligible for alternative sentences of probation or community control sanctions." *Id.* at ¶ 30.

**{¶23}** "Where the circumstances indicate that the defendant knew he was ineligible for probation and was not prejudiced by the trial court's failure to comply with Crim.R. 11(C)(2)(a), the trial court's acceptance of the defendant's guilty plea to the nonprobationable crime of rape without personally advising the defendant that he was not eligible for probation constitutes substantial compliance with Crim. R. 11." *Nero*, 56 Ohio St.3d 106, 564 N.E.2d 474, at syllabus.

**{¶24}** In the present case, the circumstances demonstrate that Gensert knew that he was ineligible for probation or community control sanctions by virtue of the fact

8

that the trial court advised him that prison was mandatory. At the plea hearing, the court, addressing Gensert directly, stated: "prison is presumed necessary and it is mandatory because it is a Felony of the First Degree with a specific factual finding because of the age of the female victim." The court further stated: "the potential penalties you're looking at is life without possibility of parole, or a mandatory minimum term of 15 years and a maximum term of life imprisonment." Gensert acknowledged that he understood prison was necessary and mandatory, both at the plea hearing and in his written plea agreement.[1] The acknowledgment of a mandatory prison sentence is inconsistent with any reasonable belief in the possibility of probation or community control sanctions. *State v. Brown*, 11th Dist. Geauga No. 2003-G-2504, 2004-Ohio-1843, ¶ 12 ("a trial court substantially complies with the requirement of Crim.R. 11(C)(2)(a) when the court informs a defendant that a mandatory prison sentence will be imposed and the defendant subjectively understands that his sentence must include prison time"); *State v. Spock*, 8th Dist. Cuyahoga No. 99950, 2014-Ohio-606, ¶ 15 ("defendant who understands that actual incarceration is mandatory necessarily understands that he is ineligible for probation or community control sanctions and, therefore, cannot demonstrate prejudice as a result of the court's failure to comply literally with the rule").

{¶25} Gensert further argues that he "was never advised by the trial court that, upon acceptance of his guilty plea, the court could proceed to sentence him immediately." Appellant's brief at 8.

---

1. Gensert's written plea states: "I have been informed by the Court, and understand, that **I am not eligible for probation or community control sanctions**."

9

{¶26} Although the trial court did fail to advise Gensert that it could proceed with judgment and sentence upon acceptance of the plea, under the totality of the circumstances, Gensert was either aware that the court could proceed to sentence him or has failed to show a prejudicial effect from the court doing so.

{¶27} In the written plea agreement, Gensert acknowledged that "the Court, upon acceptance of a plea of guilty, can sentence me immediately after accepting my plea and upon completion of my sentencing hearing." In the plea agreement, Gensert also waived a PSI (pre-sentence investigation report) and agreed to a jointly recommended prison sentence of a "mandatory minimum term of fifteen (15) years and a maximum term of Life Imprisonment." At the change of plea hearing, Gensert again waived the PSI and reaffirmed the jointly recommended sentence. The court proceeded to impose the jointly recommended sentence without objection.

{¶28} This court has previously reached the same conclusion under similar circumstances. *State v. Porterfield*, 11th Dist. Trumbull No. 2002-T-0045, 2004-Ohio-520, ¶ 46 (the fact that "during the plea hearing appellant specifically waived his right to a pre-sentencing investigation report, raised no objections to the trial court's immediate sentence, and failed to make any request of the trial court to delay sentencing until a future date * * * establishes appellant's subjective understanding that the trial court would move directly to judgment and sentencing after the acceptance of his guilty plea") and ¶ 47 ("appellant has failed to show any resulting prejudice" where he did not "present any evidence * * * which would demonstrate that had he not understood the manner in which the trial court would enter judgment and sentence"), *rev'd on other grounds*, 106 Ohio St.3d 5, 2005-Ohio-3095, 829 N.E.2d 690.

{¶29} Finally, Gensert claims his statement to the court before sentencing negates "any allegation that Appellant had an understanding of the consequences of his plea or the waiver of his rights." Appellant's brief at 8. Gensert addressed the court as follows:

> This is more of a family affair but – for the most part. Her family had some issues back [sic], which she explained to me. And so far, from what I can notice is, my family doesn't get along with hers. So I'm assuming this is just an allegation, if anything. She has a history of trying to make my family look bad. I just want to point it out.

{¶30} Contrary to Gensert's position, this statement has little or no relevance to his understanding of the consequences of his plea or the waiver of his rights. At most, it suggests equivocation with respect to the factual basis for the plea.[2] It does not raise doubts regarding the voluntary, knowing, and intelligent nature of the plea. *State v. Siders*, 78 Ohio App.3d 699, 701, 605 N.E.2d 1283 (11th Dist.1992), quoting *Menna v. New York*, 423 U.S. 61, 62 fn. 2, 96 S.Ct. 241, 46 L.Ed.2d 195 (1975) ("a counseled plea of guilty is an admission of factual guilt so reliable that, where voluntary and intelligent, it *quite validly* removes the issue of factual guilt from the case"). It has been oft held that "a defendant's protestations of innocence * * * are insufficient grounds for vacating a plea that was voluntarily, knowingly, and intelligently entered," and "when a defendant makes claims of innocence after a guilty plea has been accepted, a trial court

---

2. With respect to the factual basis for the plea, the State proffered the following: "[T]he State would have proven * * *, specifically on or about May 11th, 2015 in Trumbull County, Ohio, this defendant, Nickolas Gensert, did perform anilingus on a three-year old child, date of birth, August 9th, 2011. The State would have offered testimony from the child, assuming she was competent, the statement she made to medical personnel, the child's mother, law enforcement and the defendant's own statements."

11

has no duty to inquire into a defendant's reasons for pleading guilty." *State v. Reeves*, 8th Dist. Cuyahoga No. 100560, 2014-Ohio-3497, ¶ 13 (citations omitted) (cases cited); *State v. Wynn*, 1st Dist. Nos. C-150051 and C-150052, 2015-Ohio-4646, ¶ 12 ("[a]fter a defendant has entered a plea and the plea has been accepted pursuant to Crim.R. 11, courts are not required to inquire into a defendant's reasoning for pleading * * * despite later assertions of innocence").

{¶31} Gensert's sole assignment of error is without merit.

{¶32} For the foregoing reasons, the judgment of the Trumbull County Court of Common Pleas, accepting Gensert's plea of guilty to a single count of Rape, is affirmed. Costs to be taxed against appellant.


TIMOTHY P. CANNON, J.,

THOMAS R. WRIGHT, J.,

concur.