[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as
*Great Lakes Bar Control, Inc. v. Testa,* Slip Opinion No. 2018-Ohio-5207.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2018-OHIO-5207

GREAT LAKES BAR CONTROL, INC., APPELLEE, *v.* TESTA, TAX COMMR., APPELLANT.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Great Lakes Bar Control, Inc. v. Testa,* Slip Opinion No. 2018-Ohio-5207.]

*Taxation—Sales tax on "building maintenance and janitorial services" under R.C. 5739.01(B)(3)(j)—Appellee's beer-line service is not a "building maintenance and janitorial service" within meaning of R.C. 5739.01(II)— Board of Tax Appeals' decision reversing tax commissioner's assessment affirmed.*

(No. 2017-0655—Submitted September 11, 2018—Decided December 27, 2018.)

APPEAL from the Board of Tax Appeals, No. 2016-34.

_____

**DEWINE, J.**

{¶ 1} Does the cleaning of beer-tap lines constitute a "building maintenance and janitorial service"? If the answer is yes, then the service is subject to Ohio's sales tax. We conclude, though, that the answer is no—the service is not taxable.

## Background

{¶ 2} This case comes to us by way of an appeal by the tax commissioner from a decision of the Board of Tax Appeals ("BTA"). Great Lakes Bar Control, Inc., provides services related to selling, installing, and servicing beer-dispensing systems. Over time, draft-beer systems tend to accumulate sediment such as bacteria and yeast that can clog lines and taps—and give beer a bad taste. To address this concern, Great Lakes provides a beer-line maintenance service to remove any buildup of unwanted sediment and prevent the lines from becoming blocked.

{¶ 3} The beer-line maintenance service is performed by Great Lakes' draft technicians. Draft technicians begin with a preliminary inspection to ensure that the system is functioning properly. The technicians rely in part on an electronic device that agitates the beer in the lines to prevent it from becoming stagnant. If necessary, a draft technician injects compressed gas into the system to remove sediment from the lines. During some visits, a draft technician performs the additional task of flushing the entire system with an acid or potassium rinse to prevent the growth of bacteria.

{¶ 4} Following a tax audit for the period from July 1, 2004, through June 30, 2011, the Ohio Department of Taxation determined that the beer-line service involved "cleaning * * * tangible personal property," *see* R.C. 5739.01(II), and was therefore subject to the sales tax as a "building maintenance and janitorial service" under R.C. 5739.01(B)(3)(j). Great Lakes had not collected sales tax from its customers during the audit period and was assessed $102,347.91 for the tax with interest and a penalty.

2

**{¶ 5}** Great Lakes challenged the assessment on the grounds that the beer-line service does not fit within the statutory definition of a "building maintenance and janitorial service." The tax commissioner rejected Great Lakes' argument, and Great Lakes appealed to the BTA.

**{¶ 6}** The BTA reversed the tax commissioner's decision, concluding that because Great Lakes' beer-line service was primarily a maintenance service, any cleaning was merely incidental to that maintenance and was therefore not subject to the tax.

### Analysis

**{¶ 7}** The question before us is whether Great Lakes' beer-line service is subject to the sales tax. The tax applies to "[a]ll transactions by which * * * [b]uilding maintenance and janitorial service is or is to be provided." R.C. 5739.01(B)(3)(j). "Building maintenance and janitorial service" is defined in the statute as "cleaning the interior or exterior of a building and any tangible personal property located therein or thereon, including any services incidental to such cleaning for which no separate charge is made." R.C. 5739.01(II). Whether the tax applies to the beer-line service turns on the meaning of "cleaning" within the statutory provision.

**{¶ 8}** "Cleaning" is not defined in the statute. When a term is undefined, we give the term its "plain and ordinary meaning." *Rhodes v. New Philadelphia*, 129 Ohio St.3d 304, 2011-Ohio-3279, 951 N.E.2d 782, ¶ 17, citing *Sharp v. Union Carbide Corp.*, 38 Ohio St.3d 69, 70, 525 N.E.2d 1386 (1988). And when interpreting the language of a statute, "[w]ords and phrases shall be read in context and construed according to the rules of grammar and common usage." R.C. 1.42.

**{¶ 9}** Evaluating the context in which a word is written is essential to a fair reading of the text: "The words of a governing text are of paramount concern, and what they convey, in their context, is what the text means." (Boldface omitted.) Scalia & Garner, *Reading Law: The Interpretation of Legal Texts* 56 (2012); *see*

*also id.* ("words are given meaning by their context"). Rather than limit our analysis to the "hyperliteral meaning of each word," we consider the ordinary meaning of the word as it is used within the surrounding text. *Id.* at 356.

{¶ 10} Thus, we must consider the ordinary meaning of "cleaning" in the context of providing a "janitorial service." We think it plain that the beer-line service does not fit within the common usage of "cleaning" in the janitorial sense. Janitorial cleaning services are generally understood to encompass activities such as washing floors or windows, removing garbage, vacuuming, dusting, and the like. While that is certainly not an exhaustive list, no one would take the ordinary meaning of janitorial cleaning to include inspecting and flushing beer-tap lines.

{¶ 11} The dissent argues that because sanitizing beer lines is a manner of "cleaning" them, *see* R.C. 5739.01(B)(3)(j), and because the beer lines constitute "tangible personal property" located in the building, the beer-line service must necessarily qualify as a "building maintenance and janitorial service" for tax purposes, *see* R.C. 5739.01(II). Dissenting opinion at ¶ 17. But that approach zeroes in on the meaning of each word or phrase in isolation, disregarding the importance of considering the text as a whole. Such a hyperliteral reading falls flat because it overlooks the natural connotation of "cleaning" within the framework of providing a janitorial service.

{¶ 12} Indeed, under the dissent's interpretation of the statutory language, a whole swath of obviously nonjanitorial "cleanings" could be brought within the scope of the janitorial-service tax. Take, for example, a tech-service provider that specializes in cleaning computer hard drives, a professional data-cleansing service that scrubs database errors, or a business that dry-cleans clothes. Even a fish-cleaning house on Lake Erie—whose service involves the "cleaning" (scaling, gutting) of "tangible personal property" (the fish)—might be considered a janitorial service.

{¶ 13} We think the more sensible approach is to adhere to the common meaning of the word as it is used with the surrounding text. Because the beer-line service does not fit the plain meaning of "cleaning" in the context of providing a "janitorial service," Great Lakes can keep the taps flowing sans tax.

Decision affirmed.

KENNEDY, FRENCH, and DEGENARO, JJ., concur.

O'DONNELL, J., concurs in judgment only, and would affirm the decision of the Board of Tax Appeals for the reasons stated in its decision.

FISCHER, J., concurs in judgment only.

O'CONNOR, C.J., dissents, with an opinion.

_____

**O'CONNOR, C.J., dissenting.**

{¶ 14} Appellee, Great Lakes Bar Control, Inc., in its own words, has described its beer-line service as cleaning. The General Assembly has defined a taxable "janitorial service" as "cleaning the interior or exterior of a building and any tangible personal property located therein or thereon." R.C. 5739.01(II). Despite the absence of any reason to muddle that definition or confuse the statute's plain language, the majority distinguishes Great Lakes' beer-line service from a taxable cleaning service as described in the statute.

{¶ 15} The majority concludes that the General Assembly must have meant the statute to apply to "janitorial cleaning" of a type the majority can imagine, including "washing floors or windows, removing garbage, vacuuming, dusting, and the like." Majority opinion at ¶ 10. The majority relies on the first sentence of R.C. 1.42, which provides the statutory rule of construction that "[w]ords and phrases shall be read in context and construed according to the rules of grammar and common usage." But the second sentence of R.C. 1.42 applies here: "Words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly." Here, there is a legislative

definition. So, our task is to determine whether the beer-line service constitutes "cleaning the interior or exterior of a building and any tangible personal property located therein or thereon" under R.C. 5739.01(II).

{¶ 16} Great Lakes' beer-line service meets the statutory definition of "building maintenance and janitorial service." The beer-line service is cleaning, which is essential to the safe operation of the beer lines. *See, e.g.*, *Max's of Camden Yards v. A.C. Beverage*, 172 Md.App. 139, 145, 913 A.2d 654 (2006) (noting that a complaint had alleged that bar patrons became ill after consuming tainted beer due to the bar's negligence in failing to properly maintain and clean its beer lines). The service involves evacuating sediment and clogs from the lines and flushing the system to disinfect and inhibit particulate growth. When the service has been completed, Great Lakes submits an invoice describing the service as "Draft Beer Line Cleaning" or a "FULL CLEAN" (capitalization sic).

{¶ 17} There is no need for this court to brew confusion with a strained reading of the facts and plain statutory language here because Great Lakes' beer-line service falls within the definition of "building maintenance and janitorial service" for purposes of R.C. 5739.01(B)(3)(j). Accordingly, I would reverse the decision of the Board of Tax Appeals and reinstate the final determination of appellant, the tax commissioner. Therefore, I dissent.

———————————

Michael DeWine, Attorney General, and Daniel G. Kim, Assistant Attorney General, for appellant.

Buckingham, Doolittle & Burroughs, L.L.C., Steven A. Dimengo, Matthew R. Duncan, and Richard B. Fry, for appellee.

———————————